# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
October 9, 2012

Lyle W. Cayce
Clerk

No. 11-60859
Summary Calendar

YOSIEF ANDEBRHAN FESSEHAYE,

Petitioner

v.

ERIC H. HOLDER, JR., U. S. ATTORNEY GENERAL,

Respondent

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A201 105 784

Before DAVIS, BARKSDALE, and ELROD, Circuit Judges.

PER CURIAM:[*]

Yosief Andebrhan Fessehaye, a native-citizen of Eritrea, petitions for review of the Board of Immigration Appeals' (BIA) dismissal of his appeal from an immigration judge's (IJ's) order denying asylum and withholding of removal, but granting relief under the Convention Against Torture, with removal to be withheld in accordance with Article III. He contends he was entitled to asylum based on past persecution and a well-founded fear of future persecution because of political opinion and his desertion from the Eritrean military.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Fessehaye does not challenge the BIA's determination that he was not entitled to withholding of removal; thus, any challenge here is waived. *Thuri v. Ashcroft*, 380 F.3d 788, 793 (5th Cir. 2004).  Moreover, Fessehaye raises, for the first time on appeal:  (1) the BIA should have considered his familial associations because a nuclear family is a "cognizable social group"; (2) background evidence established a pattern of persecution against similarly-situated persons – "national service deserters, draft evaders, illegal emigrants and failed asylum seekers"; and (3) if returned to Eritrea, he would be subjected to disproportionate punishment, including summary execution for desertion.  Because Fessehaye did not exhaust his administrative remedies on these issues, they cannot be considered.  8 U.S.C. § 1252(d)(1).

Generally, only the BIA decision is reviewable, *Zhu v. Gonzales*, 493 F.3d 588, 593 (5th Cir. 2007), but review of the IJ's ruling is permissible when, as here, the BIA has "adopted all or part of the IJ's reasoning", or the ruling impacts the BIA's decision. *Enriquez-Gutierrez v. Holder*, 612 F.3d 400, 407 (5th Cir. 2010).  The BIA's rulings of law are reviewed *de novo*; its findings of fact, for substantial evidence. *Zhu*, 493 F.3d at 594.  Under the substantial evidence standard, reversal is improper unless "any reasonable adjudicator would be compelled to conclude to the contrary".  8 U.S.C. § 1252(b)(4)(B); *Chen v. Gonzales*, 470 F.3d 1131, 1134 (5th Cir. 2006) (noting the rule codifies the substantial-evidence standard).

The Secretary of Homeland Security or the Attorney General may grant asylum to aliens who qualify as refugees.  8 U.S.C. § 1158(b)(1).  A refugee is a person outside of his country who is unable or unwilling to return "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion".  8 U.S.C. § 1101(a)(42)(A).  "Persecution" means "infliction of suffering or harm, under government sanction, upon persons who differ in a way regarded as offensive (*e.g.*, race, religion, political opinion, etc.), in a manner condemned by

civilized governments". *Abdel-Masieh v. INS*, 73 F.3d 579, 583 (5th Cir. 1996) (internal quotation marks and citation omitted).

Absent evidence of past persecution, Fessehaye must establish a well-founded fear of future persecution by showing a subjective fear of persecution, which is also objectively reasonable. *E.g.*, *Lopez-Gomez v. Ashcroft*, 263 F.3d 442, 445 (5th Cir. 2001). He must also demonstrate "the persecutors know of his political opinion" and "will likely persecute him *because* of it". *Ontunez-Tursios v. Ashcroft*, 303 F.3d 341, 351 (5th Cir. 2002) (emphasis in original). Prosecution for violating a country's laws generally does not constitute persecution, unless the punishment was motivated by one of the protected grounds, and the punishment is excessive or arbitrary. *E.g.*, *Abdel-Masieh*, 73 F.3d at 584.

Fessehaye asserts the evidence established he suffered past persecution for expressing a political opinion by speaking out about perceived injustices and preferential treatment in the military. According to Fessehaye, the BIA erred by: (1) concluding his first arrest was for "not following a chain of command"; and (2) failing to conclude his second arrest was primarily the result of repeatedly questioning policies during meetings, and secondarily because the Government imputed his father's political beliefs to him. He further contends the BIA did not fully consider the record evidence, and failed to assess his fear of future harm based upon his military desertion, simply relying on his failure to establish past persecution.

To the extent Fessehaye asserts the BIA failed to consider his testimony, supporting documents, or corroborative background evidence, the record reflects both the BIA and the IJ expressly considered all evidence presented. Moreover, Fessehaye's own testimony supports the BIA's conclusion that his first arrest in 2003 resulted from military insubordination, not the expression of political opinion: He testified that after his arrest in 2003, he was told his detainment was for improperly speaking out of turn to his commander in a meeting.

Further, although Fessehaye testified that he continued to publicly air his grievances, he was not re-arrested until six years later, in 2009. Again, his testimony supports the BIA's conclusion that the second arrest was motivated primarily by the Government's desire to ascertain information about his missing father (a former army captain), and not by Fessehaye's expression of his political opinion. According to Fessehaye, although the second arrest occurred after he spoke publicly at a military meeting, he likely would have been arrested even if he had not spoken because officials were interested in his father's whereabouts. He also testified that prison officials interrogated him several times about his father's location, and he received beatings when he provided unsatisfactory answers. Fessehaye did not provide any testimony to demonstrate officials questioned him regarding his own political opinions during his 15-month prison stay; nor did he demonstrate officials persecuted him because they imputed his father's political beliefs to him. *E.g.*, *In re S-P-*, 21 I. & N. Dec. 486, 489 (B.I.A. 1996). As the IJ noted, Fessehaye neither testified to what his father's political opinions or activities were, nor explained what concerned officials aside from his father's disappearance.

Fessehaye's assertion that the BIA failed to assess his fear of future harm based on his military desertion is meritless, given the BIA's specific conclusion that he "failed to carry the burden to show any harm would be on account of a listed reason" necessary for refugee status for asylum, and that prosecution for desertion or failure to complete military duties was "not persecution as required for relief under the Act". Fessehaye's testimony about fear of future persecution only asserted, given his arrest history and subsequent desertion of the military, he would be in "great danger" if returned to Eritrea. He did not assert he would be subject to "disproportionately severe punishment" on account of his race, religion, nationality, membership in a particular social group, or political opinion, or that his service in the Eritrean military would require him to engage

in "inhuman conduct".  *E.g.*, *Matter of R-R-*, 20 I. & N. Dec. 547, 551 (B.I.A. 1992).

DENIED.  **As noted, removal is to be withheld in accordance with Article III of the Convention Against Torture.**